**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JONATHAN CONNER** | * | **CIVIL ACTION NO. 25-458** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **REC MARINE LOGISTICS, LLC** | * | **MAGISTRATE JUDGE** |
| | | **JANIS VAN MEERVELD** |

\*    \*    \*    \*    \*    \*    \*    \*

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by Defendant REC Marine Logistics, LLC ("REC Marine"). R. Doc. 22. Plaintiff Jonathan Conner opposes the motion. R. Doc. 23. REC Marine replied. R. Doc. 27. At the parties' request, R. Doc. 24, the Court heard oral argument on March 12, 2026. R. Doc. 32. The Court orally granted in part and denied in part, with reasons, the motion. The Court now provides the following written reasons for the claims on which it granted summary judgment.

### I.    BACKGROUND

Mr. Conner, a Jones Act seaman, worked for REC Marine aboard the GOL WARRIOR. R. Doc. 22-3 at 4. Around 6:00 a.m. on January 27, 2024, his deckhand shift began. *Id.* Early in his shift and after pulling some rope, his shoulder began hurting. *Id.* He reported this pain to Captain Daryl Malkowski, who advised Mr. Conner to take Tylenol, thinking he may have pulled a muscle. *Id.* Mr. Conner took the Tylenol and continued to work until his shoulder pain returned. *Id.* at 5. Plaintiff testified that, when he began experiencing this shoulder pain, he did not initially believe he was experiencing something other than a pulled muscle. *Id.* Mr. Conner was ultimately diagnosed with a heart attack. R. Doc. 22-3 at 7. However, at the time that Mr. Conner reported the shoulder pain to Captain Malkowski, Mr. Conner was aware—but the captain was not—that Mr. Conner had suffered a heart attack in 2014. *Id.* at 4. As a result of this

incident, Plaintiff brought claims against REC Marine for Jones Act negligence, unseaworthiness, and failure to pay maintenance and cure. R. Doc. 1 at 3–5.

Mr. Conner experienced his first heart attack on May 8, 2014. R. Doc. 22-3 at 2. At that time, he went to the emergency room at Teche Regional Medical Center ("Teche") and was diagnosed with an inferior myocardial infarction (heart attack). *Id.* at 1–2. Mr. Conner was later transferred to Thibodaux Regional Medical Center ("Thibodaux Regional") where he underwent cardiac catheterization, and seemingly had a stent implanted. *Id.* at 2. Those doctors diagnosed Mr. Conner with hypertension, placed him on several heart medications and a cardiac diet, and recommended he stop smoking. *Id.* Plaintiff testified that he could not afford to take all his prescribed medications and only took two prescriptions for the three or four months after the 2014 heart attack, and thereafter stopped taking any medication. *Id.* at 2–3.

About seven years later, on March 11, 2021, Mr. Conner applied for employment with REC Marine. *Id.* at 3. REC Marine required him to submit to a pre-employment physical, which included answering two medical questionnaires. *Id.* at 3. The parties dispute whether Plaintiff lied about the 2014 heart attack, related procedures, and related diagnoses on these two medical questionnaires. *Id.*; R. Doc. 23-1 at 2.

For example, at oral argument, Defendant pointed to Plaintiff's answers to the Occupational Medicine Services, LLC ("OMS") form dated March 11, 2021. R. Doc. 22-2 at 73–74. On it, Mr. Conner circled "no" next to "High Blood Pressure," "Heart Disease," and "Been a patient in the hospital," despite record evidence of 2014 doctors' visits that detail the opposite: "PT REPORTS MI . . . PT WAS HOSPITALIZED FOR 3 DAYS . . . PRIOR TO MI, PT DID HAVE HX OF HIGH BLOOD PRESSURE." R. Doc. 22-2 at 63. Similarly, on a Coast Guard Form CG-719K also dated March 11, 2021, Plaintiff checked "no" next to "High or low blood

pressure" and "Heart surgery and/or implanted device (for example, . . . stent . . .)." R. Doc. 78. At oral argument, the parties acknowledged that there are no medical records detailing the stent implantation after Plaintiff's 2014 heart attack, but he acknowledges in his deposition that he had a stent put in. *See* R. Doc. 22-2 at 17–18, 104–05, 137. Mr. Conner also testified that he told someone at OMS about the stent during his pre-employment. *Id.* at 137. Thus, Defendant maintains a *McCorpen* defense due to Plaintiff's apparent lies on the two pre-employment medical questionnaires. R. Doc. 17.

With respect to the subject heart attack on January 27, 2024, the parties dispute the facts surrounding most of the events that occurred after Mr. Conner's initial report to Captain Malkowski that his shoulder hurt. Considering the Court's denial of summary judgment on liability, the Court will not rehash the facts relevant to those claims. Likewise, the Court will not describe the facts surrounding an April 4, 2024, receipt and release agreement signed by Mr. Conner with REC Marine relative to this incident because the Court also denied summary judgment as to the enforceability of the release and gave reasons for that ruling at oral argument.

## II.    PRESENT MOTION

REC Marine moved for summary judgment on all of Plaintiff's claims. R. Doc. 22. The Court denied summary judgment as to all of Defendant's arguments, but granted it as to the *McCorpen* defense and punitive damages. In short, in briefing and at oral argument, REC Marine argued that Mr. Conner's maintenance and cure claims are barred as a matter of law because he failed to disclose the 2014 heart attack and stent implementation during the hiring process. R. Doc. 22-1 at 16–20. First, REC Marine cited Plaintiff's medical records and deposition testimony which evidence the 2014 heart attack and stent to show the objective truth that Mr. Conner intentionally concealed his medical history. *Id.* at 16–18. Second, Defendant maintained that Mr.

Conner's answers to the medical questionnaire were material to REC Marine's hiring decision because the questionnaires ask for medical information related to Mr. Conner's ability to perform the kind of labor-intensive work of a deckhand and engineer. *Id.* at 18–19. Finally, REC Marine contended that there is a causal connection between the first and the second heart attack because (1) the same body part is affected, (2) Mr. Conner's medical records reveal a history of pre-existing heart conditions, and (3) Mr. Conner failed to adhere to a prescribed course of medication and lifestyle change recommendations after the 2014 heart attack. *Id.* at 19–20.

Plaintiff opposed the motion. R. Doc. 23. First, he argued that he answered each medical questionnaire question in good faith. For example, he took the position that "the prior myocardial infarction was a one-off adverse reaction to synthetic marijuana, so it had no bearing on whether he could do his job and whether he was at risk for future heart attacks." *Id.* at 22. Next, he submitted that REC Marine did not establish that it would not have hired Mr. Conner had his prior heart attack been disclosed. *Id.* at 23–25. Finally, Plaintiff contended that there is no causal link between the 2014 and the 2024 heart attacks because they are different types of heart attacks (Type-2 and Type-1, respectively). *Id.* at 25. Thus, Plaintiff submitted that REC Marine failed to establish its unequivocal entitlement to a *McCorpen* defense.

### III.    LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to

4

come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c*)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## IV.   DISCUSSION

REC Marine asked the Court to dismiss Mr. Conner's claims for maintenance and cure pursuant to its *McCorpen* defense, as well as Plaintiff's claims for punitive damages for the arbitrary and capricious denial of maintenance and cure. R. Doc. 22. For the following reasons, the motion is granted as to those claims.

### A.  Maintenance and Cure, *McCorpen* Defense

Under general maritime law, a shipowner has a duty to provide maintenance and cure to a seaman who becomes ill or injured while in the service of the ship. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979); *Lovell v. Master Braxton, LLC*, No. 15-3978, 2016 WL 6819043, at *5 (E.D. La. Nov. 18, 2016). "Cure" is the payment of medical services until the seaman reaches maximum medical improvement. *Pelotto*, 604 F.2d at 400. "Maintenance" provides a seaman with "food and lodging of the kind and quality he would have received aboard the ship." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002). "To establish a claim for maintenance and cure, a seaman need only show that his injuries occurred while in the service of the vessel." *Lovell*, 2016 WL 6819043, at *5; *Boudreaux*, 280 F.3d at 468.

Maintenance and cure "may be awarded by courts even where the seaman has suffered from an illness pre-existing his employment, but there is a general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner" in his pre-employment application. *McCorpen v. Central Gulf S.S. Corp.*, 396 F.3d 547, 548 (5th Cir. 1968), *cert. denied*, 393 U.S. 894 (1968). Thus, employers may rely on this *McCorpen* defense to deny a seaman's claim for maintenance and cure. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008). An employer successfully asserts a *McCorpen* defense and is relieved from its duty to pay maintenance and cure if it can prove that: (1) the plaintiff knowingly concealed or intentionally misrepresented a medical condition; (2) the medical condition was material to the employer's hiring decision; and (3) there is a causal link between the pre-existing condition and the injury at issue. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005).

Here, REC Marine successfully asserts a *McCorpen* defense and is therefore absolved from its duty to pay maintenance and cure. The Court will take each of *McCorpen*'s three prongs in turn.

### 1.       Intentional Misrepresentation

First, Mr. Conner knowingly concealed prior medical conditions from REC Marine. Importantly, in the Fifth Circuit, "[t]he 'intentional concealment' element does not require a finding of subjective intent" and the "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement." *Id.* at 173-74 (quoting *Vitcovich v. Ocean Rover O.N.*, No. 94-35047, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)). Because the question of knowing concealment is an objective inquiry, not a credibility determination, this question is properly decided on summary judgment. *See id.* at 174-75.

Mr. Conner objectively concealed his prior heart attack, surgical procedure, and hospital stay, as well as his high blood pressure diagnosis, on the two medical questionnaires. The two questionnaires REC Marine required Mr. Conner to fill out in concert with his employment application was plainly designed to elicit information about prior heart disease, high blood pressure, surgical procedures, history of hospitalization, and history of heart surgery. R. Doc. 22-2 at 73–83. Mr. Conner plainly circled "no" as to each of these questions; the fact that he initially circled "yes" next to "Been a patient in a hospital" is immaterial, because Mr. Conner's ultimate answer was "no" and *McCorpen*'s intentional concealment prong is an *objective* inquiry that does not contemplate a seaman's subjective thoughts as to whether his prior medical history is relevant.

As plainly evidenced in Mr. Conner's 2014 medical records and deposition testimony, he (1) had a prior heart attack; (2) was hospitalized for three days in connection with the heart attack; (3) had a stent put in; and (4) as of 2014, had a history of high blood pressure. *E.g.*, R. Doc. 22-2 at 63; *id.* at 17–18, 104–05, 137. The medical questionnaires asked him whether he suffered from the listed maladies not just at the moment he applied for employment, but if he had *ever* dealt with or been diagnosed with the various line items. *Id.* at 73–83. He objectively failed to answer those questions truthfully. REC Marine has established that Mr. Conner intentionally misrepresented or concealed his medical history when he applied for employment with REC Marine; therefore, REC Marine meets the first *McCorpen* prong.

### 2.    Materiality

Courts have construed the *McCorpen* materiality element broadly and have explained that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders

the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. However, if an employee can show that, even if undisclosed facts were material, they would have been hired regardless, the employer is not entitled to the *McCorpen* defense. *See McCorpen*, 396 F.2d at 551–52. "A triable issue of fact exists when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries." *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014).

Here, Plaintiff has not submitted sufficient facts to defeat the materiality prong of REC Marine's *McCorpen* defense. Plaintiff argued that two fact issues exist which evidence that REC Marine would have hired Mr. Conner anyways: (1) REC Marine's HSE Manager and Operations Manager testified that heart attack history will not preclude employment with REC Marine; and (2) REC Marine did not ask Mr. Conner to clarify an answer on the OMS form where he first circled "yes" but then crossed it out and circled "no." R. Doc. 23–24. For the following reasons, these points do not create fact issues.

First, that REC Marine still chooses to hire seamen who have had heart attacks in the past does not mean that REC Marine is not concerned when it learns that applicants have a history of heart disease or heart attacks. REC Marine's HSE Manager testified that OMS would flag certain applicants who may need extra medical testing and would advise REC Marine as to whether it should take more medical testing-related steps before hiring those people. R. Doc. 22-2 at 189–90. The HSE Manager further testified that applicants who disclose prior heart attacks or heart disease "[u]sually would have to turn over their paperwork from their treating cardiologist or whoever they were treating with, to the clinic." Then, "[t]he clinic would review all of their past records, current medications, and current limitations" to figure out of the applicant is fit for employment. *Id.* at 192–93. Plaintiff has not refuted these facts.

Second, that REC Marine failed to ask Mr. Conner follow-up questions related to his crossed out "yes" to the question of "Been a patient in the hospital" is immaterial. Plaintiff argues that the crossed-out "yes" and circled "no" is "an unclear disclosure" that placed "REC Marine on notice about his prior hospitalization to a level that should have resulted in further follow-up from REC Marine if it were truly interested in his answers to the form." R. Doc. 23 at 24–25. This argument misses the mark. This is not a case where a seaman left certain questions blank on the pre-employment medical questionnaires and later tried to argue that it based its decision to hire the seaman on these answers. *See Luswich v. Am. Marine Corp.*, No. 17-3241, 2018 WL 3111931 (E.D. La. June 25, 2018); *Taylor v. B&J Martin, Inc.*, No. 18-8941, 2019 WL 4752069 (E.D. La. Sept. 30, 2019). When a seaman leaves a question blank, courts have held that an employer cannot reasonably argue that the medical questions left blank were material to their hiring decisions. *Luswich*, 2018 WL 3111931 at *2; *Taylor*, 2019 WL 4752069 at *5. Here, Mr. Conner ultimately answered the question "no." Thus, Plaintiff's argument does not demonstrate that REC Marine did not rely on Mr. Conner's answer of "no" when making its hiring decision.

Overall, Plaintiff has failed to show that REC Marine's medical questions do not rationally relate to his ability to perform the job. He also did not submit sufficient facts to evidence that REC Marine did not rely on his answers during the hiring process.

### 3.      Causal Link

Last in the *McCorpen* analysis is evidence of a causal link. Courts require a "connection between the withheld information and the injury which is eventually sustained" to show the causation element. *Brown*, 410 F.3d at 175-76. While the injury need not be identical, courts have found that an injury to the same body part is sufficient to show a causal link. *Id.* at 176

(finding that a history of lumbar injuries were causally connected to the plaintiff's back injury); *Weatherford v. Nabors Offshore Corp.*, No. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004) (finding a causal link where the past injury was to plaintiff's lower back and present injury was also to his back); *In re L.S.K. Towing, Inc.*, No. 94-4134, 1995 WL 350039, at *2 (E.D. La. June 6, 1995) (holding that "the causal link seems clear" where "plaintiff's prior injury was also to the left knee"). Here, Mr. Conner's prior injuries were to the same body part—his heart. *See Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728–29 (E.D. La. 2009) (collecting and explaining cases). Under present Fifth Circuit case law, this showing is sufficient to meet the causal link prong of the *McCorpen* defense.

### B. Punitive Damages

Because the Court finds that REC Marine has satisfied all three prongs of the *McCorpen* defense and is therefore entitled to be exonerated from its maintenance and cure obligations, the Court will assess whether it is appropriate to dismiss Plaintiff's prayer for punitive damages.

The Supreme Court has explained that "the legal obligation to provide maintenance and cure dates back centuries as an aspect of general maritime law, and the failure of a seaman's employers to provide him with adequate medical care was the basis for awarding punitive damages in cases decided as early as the 1800's." *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 413 (2009). Punitive damages are available for an employer's "willful and wanton disregard of the maintenance and cure obligation." *Id.* at 424. Courts awarding punitive damages for failure to pay maintenance and cure demand a showing that the employer's actions were more than unreasonable; the conduct must be "arbitrary and capricious" which courts describe as exhibiting "'callousness and indifference to the seaman's plight.'" *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 383 (5th Cir. 2012) (quoting *Morales v. Garijak, Inc.*, 829 F.2d

10

1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995)). The Fifth Circuit "has described this 'higher degree of fault' as 'egregiously at fault,' 'recalcitrant,' 'willful,' and 'persistent.'" *Id.* (quoting *Morales*, 829 F.2d at 1358).

Here, REC Marine established a viable *McCorpen* defense to its obligation to pay maintenance and cure. It had no duty to pay maintenance and cure. Therefore, its failure to pay maintenance and cure cannot be considered willful and wanton as to give rise to a claim for punitive damages. *E.g.*, *Meche v. Doucet*, 777 F.3d 237, 249 (5th Cir. 2015) (vacating a punitive damages award after finding an employer established all three elements of a *McCorpen* defense). Mr. Conner will not be able to recover punitive damages from REC Marine in connection with his dismissed maintenance and cure claim.

## V.      CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment, R. Doc. 22, is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Plaintiff's claims for maintenance and cure and any related punitive damages. The motion is denied as to all other claims as stated on the record at oral argument.

New Orleans, Louisiana, this 16th day of March, 2026.

_____
THE HONORABLE ELDON E. FALLON

11