**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JONATHAN CONNER** | * | **CIVIL ACTION NO. 25-458** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **REC MARINE LOGISTICS, LLC** | * | **MAGISTRATE JUDGE** **JANIS VAN MEERVELD** |

\*    \*    \*    \*    \*    \*    \*    \*

## <u>ORDER & REASONS</u>

Before the Court are two motions *in limine* filed by Defendant REC Marine Logistics, LLC ("REC Marine"). R. Docs. 35, 36. Plaintiff Jonathan Conner opposes both motions. R. Docs. 38, 39. REC Marine filed replies. R. Docs. 40, 41. Considering the record, briefing, and applicable law, the Court now rules as follows.

### I.    BACKGROUND

The Court has previously summarized the facts in this case both in its summary judgment Order & Reasons, R. Doc. 34, and orally on the record at the hearing on the summary judgment motion and will not rehash the specifics here. In short, Plaintiff is a Jones Act seaman who worked for REC Marine aboard the M/V GOL Warrior. While working aboard the vessel, he suffered what was later diagnosed as a heart attack at some point in the day on January 27, 2024. The parties hotly contest the details surrounding the incident, including at what time Mr. Conner advised the captain of the severity of his symptoms, as well as REC Marine's overall reasonableness in responding to the situation. Plaintiff ultimately brought the instant suit, alleging that REC Marine was negligent in its handling of his medical emergency and that the vessel was unseaworthy because the crew lacked the training and preparation required to respond appropriately to Mr. Conner's medical emergency. Also in dispute is whether Mr. Conner signed

a valid Receipt & Release Agreement shortly after the incident which, if he did, would preclude this Court from finding REC Marine liable for this incident.

## II.     PRESENT MOTIONS

REC Marine now moves to exclude and/or limit the testimony of two of Plaintiff's designated experts—Captain Christine Hafen, Plaintiff's marine liability expert, and Dr. Xianfeng Wen, one of Plaintiff's treating physicians who is presently designated as a non-retained medical expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

### a.     Marine Liability Expert—Captain Hafen

REC Marine wishes to exclude Capt. Hafen's expert report and untimely report supplement. R. Doc. 35. Defendant's principal argument is that the first two sections of Capt. Hafen's report are inadmissible because she based those opinions on REC Marine's alleged lack of compliance with the International Safety Management Code ("ISM Code"), a set of regulations that arguably does not apply as a matter of law to the vessel Mr. Conner worked on. R. Doc. 35-1 at 6–8. Because the M/V GOL Warrior does not fall into the category of vessels that are required to be in compliance with the ISM Code, REC Marine argues the ISM Code is wholly inapplicable to this matter and thus renders Capt. Hafen's opinions unreliable since they rest on irrelevant safety standards as applied to this vessel. *Id.*

Additionally, REC Marine wishes to exclude the third section of Capt. Hafen's report because it inappropriately provides legal opinions on the Receipt & Release Agreement, which REC Marine argues goes outside of the bounds of appropriate testimony for a marine liability expert. *Id.* at 8–9. It also seeks exclusion of her supplemental report that was untimely submitted on March 31, 2026—just over two months after the deadline for Plaintiff to produce his expert reports. *Id.* at 9.

2

Plaintiff opposed most of REC Marine's requests. R. Doc. 39. As to REC Marine's ISM Code arguments, Plaintiff contends that Capt. Hafen's report does not attempt to state that the ISM Code applies as a matter of law; instead, Capt. Hafen used the ISM Code as a tool, along with her decades of experience, to assist her in reaching her opinions. *Id.* at 6–14. Plaintiff takes the position "[w]hat matters [here] is that an ICM-Code compliant . . . plan reflects industry practices for emergency preparation and pre-planning, developed through international cooperation." *Id.* Thus, Capt. Hafen's opinions are helpful for assessing REC Marine's negligence and the vessel's unseaworthiness because the ICM Code reflects internationally agreed upon industry standards. *Id.*

As to the untimely supplemental report, Plaintiff presses that it should not be excluded because (1) her supplemental analysis is consistent with her initial report, (2) neither Plaintiff nor Capt. Hafen were in possession of the data analyzed in the supplemental report at the time she wrote her initial report, and (3) the supplemental report would not prejudice REC Marine. *Id.* at 15–17. Finally, Plaintiff states that he "does not contest REC Marine's *limine* motion to the extent it seeks to prevent Captain Hafen from opining concerning whether Mr. Conner's [Receipt & R]elease was consistent with the Jones Act." *Id.* at 14–15.

Defendant replied, largely addressing Plaintiff's arguments about the supplemental report. R. Doc. 41. REC Marine principally rebuts Plaintiff's argument that neither he nor Capt. Hafen had access to the data she assessed in the supplemental report because that data is publicly available through public online databases. *Id.*

### b.      Non-retained Medical Expert—Dr. Wen

REC Marine separately moved to limit the testimony of Dr. Wen of Texas Cardiology Associations of Houston, one of Plaintiff's treating physicians. R. Doc. 36. It contends that Dr.

Wen should not be permitted to opine on causation or future medical treatment because those topics are more in the province of expert testimony that is subject to Rule 26(a)(2)(B), which requires the disclosure of, *inter alia*, a report. R. Doc. 26-1 at 2–3. It is not disputed that Dr. Wen did not issue a report. Moreover, REC Marine submits that he should not be considered a non-retained expert because Plaintiff failed to comply with the Rule 26(a)(2)(C) disclosure requirements. *Id.* at 3. Finally, it presses that any testimony elicited outside of the facts of Plaintiff's treatment would be duplicative of the testimony of Plaintiff's retained expert, Dr. Roach, who issued a timely report. *Id.* at 4.

Plaintiff submits that nonretained experts like Dr. Wen are permitted to testify about causation and future medical care if the testimony is based only on his treatment of Mr. Conner. R. Doc. 38. He avers that he has not provided Dr. Wen with any materials that could convert him into a retained expert, so any opinions would necessarily be the result of his treatment of Mr. Conner. *Id.* at 4. REC Marine replied, largely arguing that Plaintiff failed to identify any medical reports or regular treatment notes that discuss causation or future medical treatment. R. Doc. 40. Additionally, though Plaintiff did state in his expert disclosures that Dr. Wen may testify as to causation, he did not provide any further detail, and that sort of conclusory assertion does not satisfy Rule 26(a)(2)(C)'s nonretained expert disclosure requirements. *Id.*

### III.    LEGAL STANDARD

District courts have discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Supreme Court

extended *Daubert*'s applicability to experts who testify based on technical and specialized knowledge, noting that *Daubert*'s gatekeeping requirement to ensure the reliability and relevancy of expert testimony "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 of the Federal Rules of Evidence sets forth the framework governing the admissibility of expert testimony. "The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

First, Rule 702 requires that an expert must be properly qualified. "[G]enerally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications." *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021).

Second, an expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93; *Kumho Tire*, 526 U.S. at 152–53. In *Daubert*, the Supreme Court listed

several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert*, 509 U.S. at 593–95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Third, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

## IV.   DISCUSSION

REC Marine wishes for the Court to exclude or limit the testimony of Plaintiff's marine liability expert and Plaintiff's treating physician. For the following reasons, its motion is granted in part and denied in part.

### A.  Captain Hafen's Testimony Will Be Limited.

REC Marine asks that marine liability expert Capt. Hafen's testimony be limited in each the following ways, which would result in her wholesale exclusion from testifying at trial: (1) exclude opinions one and two of her report because she relies on the arguably-inapplicable ISM Code in reaching her conclusions; (2) exclude opinion three of her report because she

6

opines on a legal matters outside of her expertise; and (3) exclude her supplemental report because it was not disclosed in accordance with the Court's scheduling order. R. Doc. 35. The Court will take each in turn.

### 1.      Opinions Based on the ISM Code Are Permissible.

REC Marine argues that any opinions as to safety and operational standards, and related considerations, that Capt. Hafen formed by relying on the ISM Code are unreliable and irrelevant because the ISM Code does not apply to the M/V GOL Warrior. Defendant's argument is unpersuasive. REC Marine does not attack the report for failing any of Rule 702's requirements. It does not argue that the ISM Code itself is an unreliable resource for Capt. Hafen to utilize in rendering her opinions by attacking the ISM Code's acceptance in the maritime safety community. REC Marine largely presses that the report is irrelevant because the ISM Code does not apply to the specific vessel at issue. But that is not enough to convince this Court that Capt. Hafen's testimony is unreliable or irrelevant, or that it will not assist the trier of fact.

The Court finds that her expert testimony, reliant upon a seemingly widely accepted set of safety standards, provides the kind of specialized analysis that will assist the trier of fact in understanding the evidence in this case. REC Marine may challenge Capt. Hafen's reliance on the ISM Code in cross-examination. And of course, the Court retains the ability to limit or control the scope of her testimony at trial. Overall, the Court will not limit or exclude Capt. Hafen's testimony insofar as she points to the ISM Code in support of her conclusions.

### 2.      Opinions About the Receipt & Release Are Inadmissible.

While an expert opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), experts are not permitted to offer legal conclusions in their testimony. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). Nor may an expert testify beyond

the scope of her expertise when she provides her opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996). REC Marine presses that the third section of Capt. Hafen's expert report, which addresses the Jones Act, should be excluded both because it impermissibly reaches conclusions of law and because it goes beyond the scope of her expertise as a marine liability expert. The Court agrees. Moreover, Plaintiff "does not contest REC Marine's limine motion to the extent it seeks to prevent Captain Hafen from opining concerning whether Mr. Conner's release was consistent with the Jones Act." R. Doc. 39 at 15. Accordingly, "Opinion #3" of Capt. Hafen's expert report, *see* R. Doc. 35-2 at 28–30, will be excluded from the trial of this matter, and the Court will limit Capt. Hafen from testifying as to this portion of her report.

### 3.    The Supplemental Report Is Excluded, Unless Used for Rebuttal.

Rule 26(e) allows the supplementation of a disclosure, such as an expert report, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." But supplementation is not limitless; courts have found that "[e]xpert reports may only be supplemented in limited circumstances, specifically where supplementation 'means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Walton v. Enter. Marine Servs., LLC*, No. 14-2468, 2016 WL 2956815, at *2 (E.D. La. May 23, 2016) (quoting *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012)). Thus, "[i]f an expert's report does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26.'" *Id.* (quoting *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011)).

REC Marine asks the Court to exclude Capt. Hafen's supplemental report because it is not a true supplement and instead contains new opinions and analyzes new data; thus, it should be excluded because it was disclosed over two months after Plaintiff's deadline to provide his reports. Plaintiff submits that the data was previously unknown to him and Capt. Hafen, and that the supplement's conclusions are simple expansions of previously iterated opinions. The Court has reviewed the report and finds that it goes beyond the scope of Capt. Hafen's initial report and is not a mere supplementation to her timely-disclosed expert report. Importantly, the data analyzed in the supplemental report is publicly available and thus was not "unavailable to" Plaintiff nor Capt. Hafen at the time of her initial report. *See Walton*, No. 14-2468, 2016 WL 2956815, at *2 (quoting *Cedar Petrochemicals*, 769 F. Supp. 2d at 278). Capt. Hafen's March 31, 2026, report will not be permitted to enter evidence, nor be opined upon in testimony, as a supplement to her January 28, 2026, report.

However, the Court notes that Capt. Hafen's supplemental report was issued on March 31, 2026—within the 30-day rebuttal report deadline provided for in Rule 26(a)(2)(D)(ii). That rule provides that an expert disclosure must be made "within 30 days after the other party's disclosure" so long as "the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). To the extent Capt. Hafen's report operates as a rebuttal report to Defendant's marine liability expert's report concerning the interpretation of AIS data, the Court will exercise its discretion at trial to allow Capt. Hafen to testify as to her supplemental report in this limited way, *i.e.*, as a rebuttal report, if Defendant's expert's testimony addresses these issues.

**B.  Dr. Wen's Testimony Will Be Limited.**

Rule 26(a)(2) governs the disclosure of expert testimony both when an expert is retained and thus required to issue a report, and when an expert is not retained and is not required to issue a report. Generally, "treating physicians are not required to comply with the report requirement of Rule 26(a)(2)(B)," which is the rule that governs retained experts who must produce reports. *Stewart v. Hankins*, No. 15-586, 2016 WL 7972907, at *2 (E.D. Tex. Oct. 27, 2016) (quoting *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 501 (S.D. Tex. 2008)). Instead, Rule 26(a)(2)(C) governs, which does not require the production of a report. But courts have limited the scope of allowable testimony: "[i]f the physician does not provide an expert report his testimony must remain 'confined to the facts disclosed during the care and treatment of the patient.'" *Barnett v. Deere & Co.*, No. 15-02, 2016 WL 4735312, *1 (S.D. Miss. Sept. 26, 2016) (quoting *Kim*, 267 F.R.D. at 502).

To address the threshold question, Dr. Wen is properly designated as a non-retained expert and therefore falls within the parameters of Rule 26(a)(2)(C), absolving him of the written report requirement of Rule 26(a)(2)(B). The only question this Court considers is the appropriate scope of his testimony. Courts in this circuit routinely allow treating physicians to testify on the issue of causation notwithstanding a lack of a written report. *E.g.*, *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 755 (N.D. Tex. 2021) ("And there is no indication in the record that [the treating physician] relied on outside resources that were provided in anticipation of litigation, which could indicate that [the plaintiff] was required to produce a written report under Rule 26(a)(2)(B)."); *Russel v. Big V. Feeds, Inc.*, No. 23-622, 2024 WL 4528913, at *4 (E.D. Tex. Oct. 18, 2024) (allowing treating physician to testify as to causation based on

10

personal knowledge and noting that "Defendants may object to . . . impermissible testimony as it arises").

The general rule is that "a treating physician may opine on the causation of a plaintiff's injuries and a plaintiff's prognosis as long as the doctor formed those opinions 'based on the care-provider's personal knowledge and observations obtained during the course of care and treatment.'" *Kim*, 267 F.R.D. at 502 (quoting *Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 249 (D. Mass. 2005)). "Conversely, where a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert and must comply with Rule 26(a)(2)(B)." *Id.* (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870–72 (6th Cir. 2007)). Therefore, as a general rule, Dr. Wen may testify as to causation and future medical treatment provided that he formed those opinions during the course of his treatment of Mr. Conner and without reference to extraneous materials. His testimony on causation and future medical treatment is limited in all other respects.

However, Defendant contests whether Plaintiff complied with Rule 26(a)(2)(C)'s disclosure requirements and separately challenges that Dr. Wen's testimony will be duplicative of Plaintiff's retained medical causation expert. The Court will take each of those arguments in turn.

### 1.    Compliance With Rule 26(a)(2)(C)

Under Rule 26(a)(2)(C), a disclosing party must still produce the following information for their nonretained experts: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." "The disclosure must, at the very least,

'state opinions, not merely topics of testimony,' and 'contain . . . a summary of the facts upon which the opinions are based.'" *Galvez*, 575 F. Supp. 3d at 756 (quoting *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 14-1028, 2017 WL 90366, at *2 (N.D. Tex. Jan. 10, 2017)). However, "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Fed. R. Civ. P. 26(a)(2), Advisory Comm.'s notes to 2010 amend.

Even under this forgiving standard, Plaintiff failed to comply with Rule 26(a)(2)(C) in disclosing a summary of the facts upon which Dr. Wen's opinions are based. Plaintiff provided the same boilerplate description of testimony *topics* for each of his nonretained experts, stating that they:

> [M]ay be called to testify as to Mr. Conner's physical and/or mental condition, the cause of his physical and/or mental medical condition and its relationship to the Defendant's negligence, the medical care given to him and that may be required in the future for this condition, the pain and suffering experienced by Mr. Conner as a result of the incident in question, the reasonable charges for the medical care necessary as a result of the incident in question in the past and in the future, and the limitations and disabilities resulting from the injuries sustained in the incident at issue (the findings, charges, and opinions of each health care provider are further outlined in their records already provided to Defendants).

R. Doc. 36-2 at 7 (Plaintiff's Designation of Expert Witnesses and First Supplemental Responses to Initial Disclosures, dated Jan. 29, 2026). While the disclosed topics are the sorts of subject matters district courts tend to allow treating physicians to testify about, the disclosure is completely silent as to the *facts* relied upon by Dr. Wen in forming his opinions, except for reference to his records. Many district courts have found that references to medical records in this way fail to satisfy Rule 26(a)(2)(C)'s requirements because, for example, "the [medical] records did not adequately include the subject matter, facts, and opinions of the physician—only

12

the facts that might *underlie* such an opinion." *Talbot v. Elec. Ins. Co.*, No. 17-299, 2018 WL 6257110, at *3–4 (M.D. La. Nov. 29, 2018) (collecting cases) (quotation summarizing *Schultz v. Ability Inc. Co.*, No. 11-1020, 2012 WL 5285777, at *2 (N.D. Iowa Oct. 25, 2012)); *see also Logan v. Westfield*, No. 17-29, 2020 WL 412216, at *7 n.100 (W.D. La. Jan. 24, 2020) (collecting cases).

This Court agrees that mere reference to the medical records, without more, is insufficient to satisfy Rule 26(a)(2)(C)'s disclosure requirement because " the question is not the level of specificity required in the summary, because Plaintiff has failed to produce *any* summary of the facts and opinions to which [Dr. Wen] is expected to testify." *Id.* at *4 (emphasis added). "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Exclusion of the evidence is mandatory and automatic unless the party demonstrates substantial justification or harmlessness." *Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 11-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012). Courts use four factors when determining whether substantial justification or harmlessness exists: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bitterroot Holdings, L.L.C. v. MTGLQ Invs., L.P.*, 648 F. App'x 414, 419 (5th Cir. 2016) (quoting *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

Testimony from a treating physician is certainly important evidence. However, considering that Plaintiff has a retained medical expert who has seemingly issued a timely report that touches on causation and future treatment, it is less important for Plaintiff's treating

13

physician to testify about causation and future treatment. Prejudice to REC Marine is most likely minimal, and REC Marine raises no prejudice arguments in its briefing. Furthermore, Defendant had the opportunity to take Dr. Wen's deposition and, if it did, glean his perspective on causation and future medicals from his vantage point as a treating physician. The Court will not grant a continuance to cure any prejudice because trial is a handful of weeks away, and the benefit of keeping the trial date outweighs any benefit of granting a continuance, which was also not asked for by any party. Finally, Plaintiff did not identify any reason for failing to provide a summary of the facts upon which Dr. Wen will base his causation and future treatment testimony. Overall, the factors net neutral, but the Court will not exclude the defect in Plaintiff's Rule 26 disclosures for Dr. Wen because such defect is most likely harmless to REC Marine, given its lack of prejudice arguments in its briefing and its opportunity to depose Dr. Wen. And, in any event, the Court will use other tools to appropriately limit Dr. Wen's testimony.

In conclusion, the Court will not limit Dr. Wen's testimony due to Plaintiff's failure to comply with Rule 26(a)(2)(C). But if Dr. Wen begins to testify beyond what he personally saw and did and why he acted certain ways as a treating physician in opining about causation or future medical treatment, that testimony is impermissible and Defendant may make an appropriate objection at trial. *E.g.*, *McCord v. United States*, No. 22-251, 2024 WL 2922978, at *4 (E.D. Tex. June 10, 2024) (deciding not to wholesale exclude the testimony of treating physicians, limiting their testimony in this way, and noting that the defendant may raise appropriate objections at trial).

### 2.    Duplicative Expert Testimony Under Rule 403

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting

cumulative evidence." Fed. R. Evid. 403. Regarding multiple expert witnesses who may testify on similar topics, this rule is intended to prevent "parading additional experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert." *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 411 (5th Cir. 1989). However, there is no "precise limit on the number of experts who can testify in a given area." *Id.* But "[i]t is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court." *Harmeyer v. Dohm*, No. 06-4220, 2007 WL 4294667, at *4 (E.D. La. Mar. 7, 2007) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985), *cert. denied*, 471 U.S. 1126, 105 S. Ct. 2659, 86 L. Ed. 2d 276 (1985)).

Defendant cites no case wherein a district court has excluded a second medical causation or future medical treatment opinion as cumulative pursuant to Rule 403. *See* R. Doc. 36-1 at 4. As such, the Court will not, at this time, restrict Plaintiff from calling both a retained expert who specifically produced a report on causation and a nonretained expert who may be able to testify as to causation if his opinions are based on his personal treatment of Mr. Conner and nothing more. However, testimony at trial may be limited to the extent that it is cumulative upon appropriate objection or motion by Defendant.

V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motions to exclude or limit, R. Docs. 35 & 36, are **GRANTED IN PART** and **DENIED IN PART**. The motions are **GRANTED** in that Capt. Hafen (1) may only testify as to her supplemental report if it can be properly considered a rebuttal report under Rule 26(e), and (2) may not testify as to the Receipt & Release Agreement. The motions are **DENIED with prejudice** as to Capt. Hafen's opinions based upon the ISM

Code. The motions are **DENIED without prejudice** as to Dr. Wen's testimony as a nonretained expert.

New Orleans, Louisiana, this 21st day of April, 2026.

_____
THE HONORABLE ELDON E. FALLON